IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DORMAN PRODUCTS, INC., | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| PACCAR, INC., | NO.  13-6383 |
| Defendant. | |

DuBois, J.                                                      August 22, 2016

**M E M O R A N D U M**

## I.      INTRODUCTION

This case involves design patent infringement claims by PACCAR, Inc., ("PACCAR")
against Dorman Products, Inc., ("Dorman") and unfair competition counterclaims by Dorman
against PACCAR. PACCAR, which designs and manufactures heavy-duty trucks, alleges that
aftermarket replacement headlights sold by Dorman infringe PACCAR's design patents. Dorman
alleges that PACCAR committed various business torts by sending cease-and-desist letters to
Dorman's vendors.

Presently before the Court are the parties' Motions for Summary Judgment and *Daubert*
Motions. Following oral argument, the Court disposes of the Motions as set forth below.

## II.     BACKGROUND

### A.      Patents in Suit

PACCAR designs and manufactures heavy-duty trucks including Peterbilt and Kenworth
trucks. PACCAR owns U.S. Design Patents Nos. 426,905, 525,731, and 526,429.

#### 1.      *Patent No. D426,905*

United States Design Patent No. 426,905 ("the '905 patent") was issued on June 20,
2000, and claims "[t]he ornamental design of an exterior surface configuration of a truck

headlight, as shown and described." Dorman Mot. for Summ. J., Ex. 1. The '905 patent includes

five figures depicting various perspectives of the claimed design for a left truck headlight. In

addition, the patentee explains "[t]he design envisioned contains a second portion whose image

is mirror symmetrical to the one shown." Figure 1 of the '905 patent is shown below. [1]



FIG. 1

It is PACCAR's position that the '905 patent claims the ornamental design that is

commercially embodied in the surface lens of the headlight on PACCAR's Peterbilt 386/387

trucks. *See, e.g.*, PACCAR Mot. for Summ. J., Statement of Material Facts ¶ 86.

2.      *Patent No. D525,731*

United States Design Patent No. 525,731 ("the '731 patent") was issued on July 25, 2006,

and claims "the ornamental design for a truck headlamp, as shown and described." Dorman Mot.

for Summ. J., Ex. 3. The '731 patent includes fourteen figures depicting various perspectives of

the claimed design for a left and right truck headlight. Figure 1 of the '731 patent is shown

below.

---

[1] As is customary in design patents, each of the patents in suit provides that the portion of each
figure shown in broken lines "denotes environment and is not part of the claimed design."



*Fig.1.*

It is PACCAR's position that the '731 patent claims the ornamental design that is commercially embodied in the headlight used on PACCAR's Kenworth T660 truck. *See, e.g.*, PACCAR Mot. for Summ. J., Statement of Material Facts ¶ 87.

3.      *Patent No. D526,429*

United States Design Patent No. 526,429 ("the '429 patent") was issued on August 8, 2006, and claims "[t]he ornamental design for a surface configuration of [sic] truck headlamp, as shown and described." Dorman Mot. for Summ. J., Ex. 2. The '429 patent includes fourteen figures depicting various perspectives of the claimed design for a left and right truck headlight. Figure 1 of the '429 patent is shown below:



*Fig.1.*

It is PACCAR's position that the '429 patent claims the ornamental design that is commercially embodied in the surface lens of the headlight used on PACCAR's Kenworth T660 truck. *See, e.g.*, PACCAR Mot. for Summ. J., Statement of Material Facts ¶ 88.

### B.    Dorman's Replacement Parts

Dorman is an automotive replacement parts supplier to the aftermarket and mass merchandise markets. PACCAR Mot. for Summ. J., Statement of Material Facts ¶ 8. Dorman manufactured and sold replacement headlights for (1) Peterbilt 386/387 trucks, as Dorman Products Nos. 888-5403 and 888-5404, and (2) Kenworth T660 trucks, as Dorman Products Nos. 888-5401 and 888-5402. PACCAR Mot for Summ. J., Statement of Material Facts ¶ 10–11. Dorman sells its parts to various automotive parts retailers. PACCAR Mot. for Summ. J., Statement of Material Facts ¶ 8.

### C.    Procedural History

On September 24, 2013, PACCAR, through counsel, sent a letter to Dorman alleging that Dorman's replacement headlights for Peterbilt 386/387 and Kenworth T660 trucks infringed the '905, '731, and '429 patents. Dorman Mot. for Summ. J., Ex. 69. PACCAR demanded that Dorman stop selling the replacement parts. *Id.* On October 3, 2013, Dorman, through counsel, responded that it was reviewing PACCAR's contentions. Dorman Mot. for Summ. J., Ex. 70.

On October 22, 2013, PACCAR, through counsel, sent cease-and-desist letters to three of Dorman's retailer customers, O'Reilly Automotive, Inc., Fleet Truck Parts, and Raney Truck Parts, Inc. Dorman Resp. to PACCAR Mot. for Summ. J., Exs. 12, 13, 15. These letters demanded that the retailers cease selling Peterbilt 386/387 and Kenworth T660 replacement headlights manufactured by Dorman and alleged that sale of the headlights constituted

infringement of PACCAR's design patents. *Id.* PACCAR sent a second cease-and-desist letter to O'Reilly on November 1, 2013. Dorman Mot. for Summ. J., Ex. 72.

On November 1, 2013, Dorman filed a Complaint in this Court. In its Complaint, Dorman sought a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that the '905 patent was invalid. Dorman also asserted tort claims: (1) for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (2) for unfair competition under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201 et seq., and Pennsylvania common law; and (3) for tortious interference with business relations under Pennsylvania common law.

On November 14, 2013, PACCAR filed an Answer and Counterclaims. In its Counterclaims, PACCAR asserted claims for infringement of the '905, '731, and '429 patents. PACCAR also asserted claims for willful infringement under 35 U.S.C. § 284. On December 5, 2013, Dorman filed an Answer to PACCAR's counterclaims and asserted, *inter alia*, the invalidity of the '731 and '429 patents.

The Court has jurisdiction over Dorman's declaratory judgment claim and PACCAR's patent infringement counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338. The Court has jurisdiction over Dorman's tort claims pursuant to 28 U.S.C. §§ 1331 and 1367.

On December 5, 2013, Dorman filed a Motion to Dismiss, in which it sought, *inter alia*, dismissal of PACCAR's claims for willful infringement. By Order dated February 21, 2014, the Court denied the Motion without prejudice to Dorman's right to raise the issue by motion for summary judgment.

On April 8, 2014, Dorman filed a Motion to Stay pending *inter partes* review of the '731 and '429 patents before the United States Patent and Trademark Office ("PTO"). The Court granted the Motion to Stay by Memorandum and Order dated June 16, 2014. The PTO affirmed

the validity of the challenged claims of the '731 and '429 patents in *inter partes* review. Following the PTO decision, the Court returned the case to the active docket by Order dated December 17, 2014.

In August 2015, prior to the close of fact and expert discovery, the parties filed multiple seriatim Motions for Summary Judgment on various issues as well as Motions to Exclude various expert opinions. The Court, by Order dated November 4, 2015, denied all such Motions as premature and not ripe for decision because discovery was ongoing and the record was not complete. The Court issued a Scheduling Order dated November 18, 2015, that required each party to file a motion for summary judgment covering all issues ripe for decision as a matter of law and a *Daubert* motion covering all challenged experts following the close of discovery.

Presently before the Court are Dorman and PACCAR's respective Motions for Summary Judgment and *Daubert* Motions filed pursuant to that Order. Following the decision of the United States Court of Appeals for the Federal Circuit in *The Medicines Company v. Hospira,* --- F.3d ----, 2016 WL 3670000 (Fed. Cir. July 11, 2016) (en banc), the Court requested supplemental briefing on the effect of that decision on the on-sale bar issues in this case, which the parties submitted. The Court held oral argument on the pending motions on August 1, 2016.

### III.     MOTIONS FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment, Dorman argues that: (1) all three patents in suit are invalid as a matter of law under 35 U.S.C. § 102(b) because they were the subject of a commercial offer for sale more than one year prior to their respective filing dates; (2) the '429 patent is invalid as a matter of law under 35 U.S.C. § 102(b) because it was publicly disclosed more than one year prior to its filing date; (3) PACCAR's willful infringement claims fail as a matter of law; and (4) that Dorman's replacement part for the right headlight for the Peterbilt

386/387 model trucks does not infringe the '905 patent because PACCAR disclaimed the right headlight during prosecution. PACCAR, in its Motion for Summary Judgment argues that: (1) no reasonable jury could conclude that Dorman's replacement headlights do not infringe the asserted patents; (2) Dorman's business tort claims fail as a matter of law; and (3) PACCAR's affirmative defense of invalidity based on the on-sale bar under 35 U.S.C § 102(b) fails as a matter of law.

For the reasons that follow, the Court denies Dorman's Motion for Summary Judgment and grants PACCAR's Motion for Summary Judgment on the on-sale bar issue and concludes that the patents in suit were not the subject of commercial offers for sale prior to the relevant critical dates. The Court denies Dorman's Motion for Summary Judgment on the ground of invalidity of the '429 patent based on public disclosure and on the ground of no infringement of the '905 patent due to a disavowal of scope. The Court grants Dorman's Motion for Summary Judgment on PACCAR's willful infringement claims.

The Court denies PACCAR's Motion for Summary Judgment of infringement on the ground that Dorman has presented genuine disputes of material fact. The Court grants PACCAR's Motion for Summary Judgment on Dorman's business tort claims.

### A.     Applicable Law

The United States Court of Appeals for the Federal Circuit applies the law of the regional circuit to a motion for summary judgment. *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016). The court grants a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012)). "A genuine dispute over a material fact exists when 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B.     On-Sale Bar

In its Motion for Summary Judgment, Dorman argues that each of the patents in suit are invalid under 35 U.S.C. § 102(b) because they were the subject of a commercial offer for sale more than one year prior to their respective filing dates. Specifically, PACCAR requested and received price quotes from its vendors for producing headlights that are alleged commercial embodiments of the patented designs. Dorman argues that these price quotes constitute invalidating commercial offers for sale. PACCAR, in its Motion for Summary Judgment, argues that Dorman's on-sale bar invalidity defense fails as a matter of law because the quotes from PACCAR's vendors were not commercial offers for sale. For the reasons that follow, the Court agrees with PACCAR, and grants PACCAR's Motion for Summary Judgment on Dorman's on-sale bar invalidity defense and denies the corresponding part of Dorman's Motion for Summary Judgment.

Section 102(b) of the Patent Act[2] provides that "[a] person shall be entitled to a patent unless . . . the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b). This language creates the so-called "on-sale bar" to patentability. *See Pfaff v. Wells Elec., Inc.*, 525 U.S. 55, 57 (1998). "[T]he on-sale bar applies when two conditions are satisfied before the critical date." *Id.* at 67. "First, the product must be the subject of a commercial offer for sale" and, "[s]econd, the invention must be ready for patenting." *Id.* "Whether the on-sale bar applies is a question of law

---

[2] All citations throughout are to the pre-America Invents Act ("AIA") version of the patent statute because the patents in suit predate the effective date of the AIA. Leahy-Smith American Invents Act, Pub. L. No. 112-29, § 35, 125 Stat. 284, 341 (2011).

based on underlying factual findings." *The Medicines Co. v. Hospira, Inc.*, --- F.3d ----, 2016 WL 3670000, at *6 (Fed. Cir. July 11, 2016) (en banc).

To satisfy the first prong, the offer for sale must be "commercial rather than experimental in character." *Pfaff*, 525 U.S. at 67. An offer for sale must be "sufficiently definite that another party could make a binding contract by simple acceptance." *Hamilton Beach Brands, Inc. v. Sunbeam Prods.*, 726 F.3d 1370, 1374 (Fed. Cir. 2013) (quoting *Atlantic Attachment Co. v. Legget & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008)). "An actual sale is not required for the activity to be an invalidating commercial offer for sale. *Hamilton Beach*, 726 F.3d at 1374. In determining whether an offer for sale has been made, "the principles of general contract law" apply. *Id.* at 1375. Section 102(b) requires that the offer for sale be made "in this country." "[A] commercial offer for sale made by a foreign entity that is directed to a United States customer at its place of business in the United States may serve as an invalid[ating] activity." *Hamilton Beach*, 726 F.3d at 1375.

The United States Court of Appeals for the Federal Circuit recently clarified the "commercial" limitation to the first prong of the on-sale bar. *See Medicines Co.* 2016 WL 3670000, at *8. To determine whether a particular offer for sale is commercial, the court should consider, *inter alia*, whether title to the patented product passed or would pass in the transaction, whether the alleged offer for sale was confidential, and whether the transaction involved "sale of manufacturing services," as opposed to sale of the patented product. *Id.* at *8–11. "[M]ere sale of manufacturing services by a contract manufacturer to an inventor to create embodiments of a patented product for the inventor does not constitute a 'commercial sale' of the invention." *Id.* at *8. Rather, "the fact that a transaction is between a supplier and inventor is an important indicator that the transaction is *not* a commercial sale . . . ." *Id.* at *13 (emphasis added).

There is no general "supplier exception" to the on-sale bar. *Id.* at *13. The court must focus "on the commercial character of the transaction, not solely on the identity of the participants." *Id.* at *13. However, a transaction between an inventor and a manufacturer will only trigger the on-sale bar in situations such as "where the supplier has title to the patented product or process, the supplier receives blanket authority to market the product or disclose the process for manufacturing the product to others, or the transaction is a sale of product at full market value." *Id.* at *13.

1.      '905 Patent

Dorman avers that a March 26, 1997, quotation to PACCAR from its German vendor, Osram Sylvania Automotive Lighting ("Sylvania"), constituted an invalidating commercial offer for sale of the design claimed by the '905 patent. The Court concludes that the Sylvania quotation was not a commercial offer for sale and thus does not trigger the on-sale bar under § 102(b).

In the fall of 1996, PACCAR, as part of a redesign of its Peterbilt line of trucks, requested price quotations from several headlight manufacturers for a new headlight. Dorman Mot. for Summ. J., Ex. 6. On March 26, 1997, Sylvania returned a quotation, with attached specification, to PACCAR. Dorman Mot. for Summ. J., Ex. 15. The letter provided

> OSRAM SYLVANIA Automotive Lighting is pleased to present Peterbilt Motors Company with a quotation on the 1998 model T2100 composite assembly. The content of this quotation contains a piece price of the assembly utilizing our 9007 product and the associated tooling costs. Tooling will be invoiced, at quoted payment terms, to Peterbilt as the cost is incurred . . .

*Id.* The quotation included a piece price, packaging pricing, and pricing for production tooling.

*Id.* In addition, the quotation included freight terms, a delivery location, and estimated annual volumes for a requirements contract for ten years. *Id.* It further provided that the quote was valid

for 120 days. *Id.* The quotation was based on an attached specification, incorporated in the quotation by reference. *Id.*

It is clear that the Sylvania quotation constituted an offer for sale that would have created a binding contract upon acceptance. The offer included a delivery location, freight terms, unit cost, estimated annual volume, and provides that it is a firm offer that will be open for 120 days. *See, e.g.*, *Hamilton Beach Brands, Inc. v. Sunbeam Prods.*, 726 F.3d 1370, 1375 (Fed. Cir. 2013) (listing a shipping address, number of units, part number, unit price, and requested delivery date as the elements of a commercial offer for sale); *see also Elan Corp., PLC v. AndRx Pharm., Inc.*, 366 F.3d 1336, 1340–41 (Fed. Cir. 2004) (explaining that a letter seeking a license was not a commercial offer for sale because it lacked delivery dates, quantity, and price).

However, the Sylvania quotation was not a "commercial" offer under *Medicines Co.* The transaction in *Medicines Co.* was significantly more "commercial" than the contract in this case. In that case, the patentee, which lacked internal manufacturing capability, contracted with its supplier for production of a patented drug. *Medicines Co.*, 2016 WL 3670000, at *1. The supplier then manufactured several "commercial size" batches of the patented drug, with a value of millions of dollars, and supplied them to the patentee. *Id.* at *2. Moreover, the parties entered into a full requirements contract for weekly batches of the drug. *Id.* However, the *Medicines Co.* court concluded that this was not a commercial offer for sale because the supplier lacked the ability to sell the patented drug to third-parties and the manufacturing contract was confidential. *Id.* at *8.

In this case, there was no commercial offer for sale because it was a transaction between the patentee, PACCAR, and a supplier, Sylvania, and PACCAR retained control of the invention during the transaction. Dorman does not dispute that the Sylvania quotation was a confidential

11

offer and that PACCAR retained title to the headlights. *See* Dorman Supp. Br. on *Medicines Co. v. Hospira*, at 5. Sylvania was not free to market the headlights or the design of said to third parties. Moreover, the Sylvania quotation provides that Sylvania would assist PACCAR with further development of the headlight design and tooling, which is consistent with a contract for manufacturing services, rather than a sale of a product at market value. In addition, the headlights were not produced in commercial amounts until after the critical date.

For these reasons, the Court concludes that the Sylvania quotation does not constitute a commercial offer for sale under § 102(b). Because there was no commercial offer for sale, the Court does not consider whether the invention was ready for patenting under the second *Pfaff* prong. The Court grants PACCAR's Motion for Summary Judgment with respect to Dorman's affirmative defense of invalidity of the '905 patent based on the on-sale bar, and denies the corresponding part of Dorman's Motion for Summary Judgment.

### 2.    *'731 and '429 Patents*

Dorman argues that a April 23, 2004, quotation to PACCAR from its German vendor, Hella KGaA Hueck & Co. ("Hella"), constituted an invalidating commercial offer for sale of the designs claimed in the '731 and '429 patents. The Court concludes that the Hella quotation was not a commercial offer for sale and thus does not trigger the on sale bar under § 102(b).

On April 9, 2004, as part of a "design refresh" of its Kenworth trucks, PACCAR requested a quotation from Hella for a redesigned headlight. Dorman Mot. for Summ. J., Ex. 49. As part of the request for quotation, PACCAR sent a series of surface geometry files depicting a headlight design and a detailed specification to Hella. *Id.* In response, on April 23, 2004, Hella provided a fourteen page quotation to PACCAR. Dorman Mot. for Summ. J., Ex. 51. In the quotation, Hella provided a per unit price for the headlights and a separate block of

"development costs," including additional design costs. *Id.* Hella also provided a delivery location, packaging costs, and a detailed timeline setting deadlines relating to design and production. *Id.* The quote also included a firm offer clause, which provided that the offer remained valid until July 23, 2004. *Id.*

Like the Sylvania quotation, the Hella quotation is an offer for sale. It included all of the elements of an offer for sale that would create a binding contract upon acceptance, including a per unit price, delivery location, packaging costs, time for delivery, and a firm offer clause. However, the Hella quotation was not a commercial offer under *Medicines Co.* because PACCAR retained control of the invention. As with the Sylvania quotation, the quotation was a confidential offer from Hella, a supplier, to provide manufacturing services to PACCAR, the patentee. Dorman does not dispute that Hella was not free to market the headlights or the claimed designs to third parties. In addition, the Hella quotation has other terms characteristic of a manufacturing contract, such as design and tooling costs, and was not a sale of a commercial embodiment of the patented design at full market value. The Court also notes that the headlights were not produced in commercial quantities until after the critical date.

For these reasons, the Court concludes that the Hella quotation does not constitute a commercial offer for sale under § 102(b). Because there was no commercial offer for sale, the Court does not consider whether the inventions were ready for patenting under the second *Pfaff* prong. The Court grants PACCAR's Motion for Summary Judgment with respect to Dorman's affirmative defense of invalidity of the '731 and '429 patents based on the on-sale bar, and denies the corresponding part of Dorman's Motion for Summary Judgment.

### C.      Public Disclosure

Dorman argues in its Motion for Summary Judgment that the '429 patent is invalid as a matter of law because it was disclosed to the public at a PACCAR dealer meeting in 2004. The Court denies Dorman's Motion for Summary Judgment of invalidity of the '429 patent on this ground because there are genuine disputes of material fact as to whether the 2004 dealer meeting was open to the public.

35 U.S.C. § 102(b) provides that a person shall be entitled to a patent unless "the invention was . . . in public use . . . in this country, more than one year prior to the date of the application for patent . . . ." Courts apply a similar two part test to the public disclosure bar as used for the on-sale bar: (1) was the invention disclosed to the public or in public use, and (2) was the invention ready for patenting. *See Pfaff*, 525 U.S. at 66–67.

With respect to the first prong, "[t]he proper test for the public use of the § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005). "Commercial exploitation is a clear indication of public use, but it likely requires more than, for example, a secret offer for sale." *Id.* The court should consider, *inter alia*, "the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed on members of the public who observed the use; and commercial exploitation." *Id.* "[T]o qualify as 'public,' a use must occur without any 'limitation or restriction, or injunction of secrecy.'" *Id.* at 1381 (quoting *Egbert v. Lippmann*, 104 U.S. 333, 336 (1881)). "Whether a public use has occurred is a question of law." *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996). "On summary judgment, once an alleged infringer presents facts sufficient to

establish a prima facie case of public use, it falls to the patent owner to come forward with some

evidence raising a genuine issue of material fact to the contrary." *Id.*

It is undisputed that PACCAR held a "dealer meeting" in or before February 2004, prior

to the September 12, 2004, critical date of the '429 patent. It is also undisputed that the meeting

was held for the purpose of showing PACCAR's newly redesigned trucks to the owners of truck

dealerships. Dorman relies on the testimony of PACCAR's Chief of Engineering, James

Bechtold, to support its argument that this dealer meeting was "accessible to the public." At his

deposition, Mr. Bechtold testified that dealer meetings were attended by "dealer principals,"

meaning "people that have financial stakes in dealerships." Dorman Mot. for Summ. J., Ex. 61,

at 121:10–11. Other than this single piece of deposition testimony, Dorman does not identify any

other evidence that the dealer meeting "occurred in public," that there was "public access" to the

dealer meeting," or that there were no confidentiality obligations attached to the meeting.

The mere fact that a dealer meeting took place is insufficient to meet Dorman's burden of

establishing a prima facie case of public use because Dorman has not established that a dealer

meeting is the type of event generally held open to the public. *See, e.g.*, *Invitrogen*, 424 F.3d at

1380 ("[P]ublic use . . . requires more than . . . a secret offer for sale."). Furthermore, PACCAR

has presented evidence that the dealer meeting was closed to the public—a declaration of a

PACCAR employee, Randall Peart, who attended the meeting. *See* Decl. of Randall G. Peart.[3]

Mr. Peart avers that PACCAR's dealer meetings are "invitation-only" events that are not open to

---

[3] At oral argument, Dorman took the position that the Peart declaration was inadmissible because it was produced after the close of fact discovery. PACCAR argued that Dorman failed to ask its Rule 30(b)(6) witness, or any other witness, any questions about the public or private nature of the dealer meeting. The Court determined that any prejudice to Dorman could be cured and that Dorman would be permitted to take the deposition of Mr. Peart prior to trial, if Dorman intends to assert invalidity of the '429 patent on the ground of public disclosure at trial. Aug. 1, 2016, Hr'g Tr., at 101:11–24.

the public. *Id.* ¶ 4. Moreover, PACCAR used security personnel to ensure that members of the public could not enter the event uninvited. *Id.* Peart also testifies that it was "a general understanding of all the attendees" due to "their history of dealing with PACCAR . . . that the presentations and displays were proprietary and confidential." *Id.* ¶ 5.

The Court concludes that Dorman has failed to meet its burden of demonstrating that the 2004 dealer meeting was a public disclosure. Moreover, PACCAR has presented evidence that the dealer meeting was private, which creates a genuine dispute of material fact. Thus, the Court denies Dorman's Motion for Summary Judgment of invalidity of the '429 patent on the ground of public disclosure at the 2004 dealer meeting.

### D.       Willful Infringement

Dorman argues in its Motion for Summary Judgment that PACCAR's willful infringement claims fail as a matter of law. The Court agrees and grants that part of Dorman's Motion for Summary Judgment.

35 U.S.C. § 284 provides that "the court may increase the damages [for patent infringement] up to three times the amount found or assessed" by the finder of fact for willful infringement. Such enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1923, 1932 (2016). "The sort of conduct warranting enhanced damages . . . [is] willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* "[S]uch damages are generally reserved for egregious cases of culpable behavior." *Id.* The Supreme Court has concluded that there is no rigid test for when enhanced damages are appropriate, but rather that "courts should continue to take into account the particular circumstances of each case in deciding

whether to award damages, and in what amount" in an "exercise [of] their discretion." *Id.* at 1933–34. Questions of fact related to willful infringement must be proven by a preponderance of the evidence. *Id.* at 1934.

In this case, PACCAR's headlights were not marked as patented. It is undisputed that Dorman first became aware of PACCAR's design patents on September 30, 2013, when Dorman received the first cease and desist letter from counsel for PACCAR.[4] Dorman Mot. for Summ. J., Ex. 70; Dorman Mot. for Summ. J. Statement of Material Facts ¶ 99. Dorman referred the first PACCAR letter to its outside counsel, who responded to PACCAR by letter dated October 3, 2013, and stated that Dorman was investigating PACCAR's contentions. Less than one month later, Dorman filed its Complaint in this case, seeking a declaratory judgment that PACCAR's design patents were invalid.

Dorman's actions in this case fall far short of conduct "characteristic of a pirate." *See Halo*, 136 S. Ct. at 1932. Dorman was aware of PACCAR's design patents for less than one month, during which time it undertook an investigation of PACCAR's claims, before filing its Complaint in this case. Throughout this litigation, Dorman has maintained both invalidity and non-infringement defenses to PACCAR's claims. There is no evidence to support PACCAR's bad faith contentions.

The Court rejects PACCAR's arguments to the contrary. First, PACCAR argues that a good-faith belief in invalidity is not a defense to a claim for willful infringement. PACCAR relies on the Supreme Court's determination that a defendant's belief in invalidity is not a defense to induced infringement. *See Commil USA, LLC v. Cisco Sys, Inc.*, 135 S. Ct. 1920, 1928

---

[4] PACCAR took the position at oral argument that Dorman should have conducted a design patent search prior to producing the headlights. Aug. 1,2016, Hr'g Tr., at 190:10–20. However, PACCAR has not identified any cases holding that a patent search, or lack thereof, is probative of the issue of willful infringement.

(2015). PACCAR's reliance on *Commil* is misplaced because that case involved scienter in a situation in which the infringer was aware of the existence of the patent. The scienter required for induced infringement is knowledge of the existence of the patent and knowledge "that the induced acts constitute patent infringement." *Id.* at 1926. The Court held that an infringer could not escape liability for induced infringement in a case in which the infringer knew infringement was occurring but believed that it was not liable due to the affirmative defense of invalidity. *Id.* at 1928.

The scienter required for willful infringement is different from that required for induced infringement. *See, e.g.*, *Bonnutti Skeletal Innovations, LLC v. Globus Medical, Inc.*, Civil Action No. 14-6650, 2015 WL 3755223, at *11–12 (E.D. Pa. June 15, 2015). While the majority of courts to consider the issue have applied the pre-*Halo* standard for willful infringement, which required a finding of objective recklessness, the post-*Halo* standard requires that the infringer's actions be "willful, wanton, malicious, [or in] bad faith." *Halo*, 136 S. Ct. at 1932. *Halo* requires more than simple awareness of the patent and awareness of infringement, and PACCAR has not met its burden of demonstrating willful infringement based on Dorman's awareness of the design patents and alleged infringement for less than one month prior to filing this action.

Moreover, Dorman has not relied solely on invalidity defenses. Rather, Dorman has consistently asserted non-infringement of the patents in suit on a variety of grounds. While PACCAR characterizes Dorman's non-infringement position as frivolous, the Court disagrees, as discussed below in connection with PACCAR's Motion for Summary Judgment of infringement.

Finally, the Court concludes that PACCAR may not base its willful infringement claims on Dorman's conduct after filing of this lawsuit because PACCAR has no evidence of pre-filing willful infringement and failed to seek a preliminary injunction. Absent evidence of pre-filing

willful infringement. a patentee who does not seek a preliminary injunction may not base a claim for willful infringement solely on the infringer's post-filing conduct. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) *overruled on other grounds by Halo*, 136 S. Ct. at 1935–36. "[W]illful infringement in the main must find its basis in prelitigation conduct." *Id.* PACCAR argues that it should be allowed to present evidence of post-filing conduct in support of its willful infringement claims despite failing to seek a preliminary injunction because it has identified a pre-filing period in which Dorman was aware of the design patents and failed to cease its allegedly infringing conduct. The Court disagrees because Dorman's conduct during the brief pre-filing period is insufficient to allow PACCAR's claims for willful infringement "in the main" to be based on pre-filing conduct. *See Seagate*, 497 F.3d at 1374.

For these reasons, the Court grants Dorman's Motion for Summary Judgment on PACCAR's willful infringement claims.

### E.    Disavowal of Scope in '905 Patent

Dorman argues in its Motion for Summary Judgment that PACCAR's claims for infringement of the '905 patent by Dorman's replacement right headlight for Peterbilt 386/387 trucks (Dorman Part No. 888-5403) fail as a matter of law because PACCAR disclaimed the design of the right headlight during prosecution. The Court concludes that Dorman has failed to meet the exacting standard for demonstrating a disavowal of scope and denies that part of Dorman's Motion for Summary Judgment.

In a case in which the patentee "originally claimed the subject matter alleged to infringe but then narrowed the claim in response to" a rejection from the patent examiner, the narrower claims issued do not cover the surrendered scope. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733–34 (2002). Prosecution history "[e]stoppel arises when

an amendment is made to secure the patent and the amendment narrows the patent's scope." *Id.*
at 736. "[A] narrowing amendment made to satisfy any requirement of the Patent Act may give
rise to an estoppel." *Id.* In the design patent context, the court must "look at the requisite
drawings . . . to determine whether a surrender has occurred." *Pacific Coast Marine Windshields
Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014). "The standard for disavowal of
claim scope is . . . exacting." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366
(Fed. Cir. 2012).

In this case, the issue concerns Figure 5 of the '905 patent, and specifically the depiction
of the right headlight marked with an arrow below.



FIG. 5

In the original patent application, the right headlight was marked in solid lines, like the left
headlight. Dorman Mot. for Summ. J., Ex. 81. In the PTO's Notice of Allowability, the examiner
objected to this Figure and stated "the second lens which appears in Figure 5 should be shown in
broken lines to indicate a single article of manufacture." Dorman Mot. for Summ. J., Ex. 82. This
was to comply with the PTO's requirement that design patents that claim multiple embodiments

identify a "single entity of manufacture." *See* MPEP § 1504.01(b). In response, PACCAR filed a revised application with the new version of Figure 5, which issued as the '905 patent. Dorman argues that this constitutes a narrowing of the claims in response to an examiner rejection and thus triggers a corresponding disavowal of claim scope.

The Court rejects Dorman's argument. The patent states that "[t]he design envisioned contains a second portion whose image is mirror symmetrical to the one shown." There is no evidence that the examiner intended to reject the design of the right headlight, or that PACCAR intended to surrender the mirror image. Instead, it is clear that the examiner's amendment simply corrected a conflict between the text of the specification and the drawings. As explained in the specification, the '905 patent drawings depict the first of two parts, but the patent also covers the mirror image of the depicted part. Depicting the claimed mirror image in solid lines in Figure 5 would have resulted in a conflict between the figure and the text of the specification. The examiner's amendment corrected the error of depicting both headlights in a single figure when the mirror image part was already separately claimed. Had the examiner intended to reject the claim to the mirror image headlight design, the text of the specification would not have been left unchallenged.

For these reasons, the Court denies Dorman's Motion for Summary Judgment of no infringement of its replacement part for the right headlight on the ground of a disavowal of scope in prosecution of the '905 patent.

### F.   Infringement

PACCAR argues in its Motion for Summary Judgment that no reasonable jury could conclude that Dorman's replacement headlights do not violate the patents in suit and that it is

entitled to judgment as a matter of law on infringement. The Court disagrees because there are genuine disputes of material fact as to infringement.

Design patent infringement is determined using the "ordinary observer" test: "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). "The patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).

The ordinary observer is not an expert in design. *Goodyear Tire & Rubbre Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998) *overruled on other grounds by Egyptian Goddess*, 543 F.3d at 683. "[T]he focus is on the actual product that is presented for purchase, and the ordinary purchaser of that product." *Id.* Expert testimony is not required to prove infringement and the patentee may rely solely on comparison of the accused product to the design depicted by the patent. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1287 (Fed. Cir. 2002). In consumer products cases, expert evidence is disfavored if the expert is likely to cause the jury to substitute the expert's opinion for their own. *See, e.g.*, *In re Nalbandian*, 661 F.2d 1214, 1217 (C.C.P.A. 1981) ("No affiant can be qualified as an expert ordinary observer who might, thereby, persuade the person who is deciding the matter that the latter's judgment of the reaction of an ordinary observer is in error.").

In this case, PACCAR argues that no reasonable jury could conclude that the ordinary observer test is not met based on a comparison of the patent drawings to Dorman's replacement parts. The Court disagrees because Dorman has identified a number of differences between the replacement headlights and the designs as depicted in the patents. First, Dorman's replacement headlights are all "styled" and include ornamental lens lines that are not included in the figures depicting the designs in the patents. Second, Dorman's replacement headlights include ridged, or ribbed, surrounding borders, whereas the patents depict solid borders. A reasonable jury could conclude that the Dorman replacement headlights create a different overall visual impression from the designs depicted in the patent figures.

PACCAR also relies on a comparison between its own replacement headlights and Dorman's replacement headlights. This comparison is not dispositive. Comparison of a patentee's commercial embodiments to the alleged infringing products is relevant only when there is no dispute that the patentee's product and the claimed design are substantially the same. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.3d 1117, 1125–26 (Fed. Cir. 1993). In this case, PACCAR's replacement headlights also include ornamental lens lines and ridged surrounding borders. Thus, there is a genuine dispute of material fact as to whether PACCAR's headlights are substantially the same as the designs depicted in the patents.

Finally, PACCAR relies on the testimony of Dorman's corporate designee witness under Federal Rule of Civil Procedure 30(b)(6), who admitted that Dorman developed the design of its replacement headlights by copying PACCAR's commercial embodiments. PACCAR Mot. for Summ. J., Ex. C, at 136:11–18. As with the comparison to PACCAR's commercial embodiments, the Court concludes that this evidence is not dispositive. The fact that Dorman based its headlight design on PACCAR's commercial embodiment is only relevant if the

commercial embodiment is substantially the same as the claimed design and, as noted above, there is a genuine dispute of material fact on that issue.

For these reasons, the Court denies PACCAR's Motion for Summary Judgment of infringement of the patents in suit by Dorman's replacement headlights.

### G.    Business Torts

In its Motion for Summary Judgment, PACCAR argues that Dorman's business tort claims, for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), unfair competition under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201 et seq., and Pennsylvania common law, and tortious interference with business relations under Pennsylvania common law, fail as a matter of law. Specifically, PACCAR argues that Dorman has failed to produce evidence that PACCAR acted in bad faith. The Court agrees with PACCAR and grants that part of PACCAR's Motion for Summary Judgment.

The United States Court of Appeals for the Federal Circuit has concluded that its law applies to cases in which unfair competition or similar business torts are asserted as counterclaims in a patent infringement action. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347 (Fed. Cir. 1999). "[A] patentee's statements regarding its patent rights are conditionally privileged under the patent laws, so that such statements are not actionable unless made in bad faith." *Id.* at 1353. With respect to federal unfair competition claims, "before a patentee may be held liable under § 43(a) [of the Lanham Act] for marketplace activity in support of its patent . . . the marketplace activity must have been undertaken in bad faith." *Id.* With respect to state law claims, "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Matthews Int'l Corp. v. Biosafe Eng'g*, 695 F.3d 1322, 1332

(Fed. Cir. 2012). Such state law claims survive preemption by federal patent law "only to the extent that those claims [are] based on a showing of bad faith action in asserting infringement." *Matthews Int'l*, 695 F.3d at 1332 (state law claims for tortious interference with contractual relations); *see also Hunter Douglas Inc. v. Harmonic Design Inc.*, 154 F.3d 1318, 1336 (Fed. Cir. 1998) *overruled on other grounds by Midwest Indus. Inc. v. Karavan Trailers Inc.*, 175 F.3d 1356, 1358–59 (Fed. Cir. 1999) (state law claims of unfair competition).

"A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). Plaintiff must prove bad faith by clear and convincing evidence. *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1371 (Fed. Cir. 2002).

Dorman alleges that letters sent by PACCAR to Dorman's vendors alleging that the headlights infringed PACCAR's patents give rise to liability under the Lanham Act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and Pennsylvania common law. PACCAR argues that Dorman has failed to meet its burden of demonstrating that PACCAR acted in bad faith. Dorman argues that PACCAR acted in bad faith for two reasons, both based on its invalidity claims. It is Dorman's position first that PACCAR's claims to the right Peterbilt headlight were objectively baseless because PACCAR knew it disclaimed that headlight in prosecution; and second, that all of PACCAR's claims are objectively baseless because PACCAR knew the on-sale bar applied.

The Court rejects Dorman's bad faith arguments. First, the Court has already rejected Dorman's on-sale bar invalidity and disavowal of scope arguments. *See* §§ III.B, III.E *supra*. Thus, PACCAR's litigation positions were reasonable and Dorman's attempt to demonstrate

PACCAR's bad faith based on these arguments is rejected. Second, even if the Court were to find the patents invalid or not infringed as a matter of law, this would not constitute bad faith unless PACCAR's litigation position were objectively baseless or PACCAR believed that the patents were invalid, unenforceable, or not infringed when it sent the letters to Dorman's customers. *Golan*, 310 F.3d at 1371. ("[P]atentees . . . are allowed to make representations that turn out to be inaccurate . . . ."). Dorman has identified no other evidence that PACCAR knew the patents were invalid or not infringed so as to establish bad faith.

Because there is no evidence that PACCAR's claims of infringement were made in bad faith, were objectively baseless, or even that the claims were unreasonable, the Court grants PACCAR's Motion for Summary Judgment on Dorman's business tort claims.

## IV.   *DAUBERT* MOTIONS

In its *Daubert* Motion, Dorman argues that the opinions of PACCAR's experts Cooper Woodring and Michael Wagner must be excluded. Dorman also seeks to exclude the declaration of a PACCAR employee, John Blumenstein. In its *Daubert* Motion, PACCAR argues that the opinions of PACCAR's expert Michael Nranian must be excluded. The Court addresses each argument in turn.

### A.   Applicable Law

Federal Rule of Evidence 702 provides that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Faced with a proffer of expert scientific testimony . . . the trial judge must determine . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592 (1993).  This gatekeeping function extends beyond scientific testimony to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The United States Court of Appeals for the Federal Circuit applies the law of the regional circuit to determine whether to admit expert testimony. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1360 (Fed. Cir. 2010).

Rule 702 has "a liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quoting *Kannankeril v. Terminix Inter., Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). As such, the "rejection of expert testimony is the exception and not the rule." Fed. R. Evid. 702 advisory committee's note.

"Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)). The party offering the expert must prove each of these requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999). Only the first two *Daubert* restrictions—qualifications and reliability—are at issue in this case.

To qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 335 (3d Cir. 2002) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). The Third Circuit has instructed courts to interpret the qualification requirement "liberally" and not to insist on a certain kind of degree or background when evaluating the qualifications of an expert. *See*

*Waldorf*, 142 F.3d at 625. However, in a patent case, an expert must be qualified in the "pertinent art." *Sundance, Inc. v. DeMonte Fabricating, Inc.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008).

The reliability requirement of *Daubert* "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). The test of reliability is "flexible" and "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 141–42. In determining whether the reliability requirement is met, courts examine the following non-exclusive list of factors identified in *In re Paoli*:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*United States v. Mitchell*, 365 F.3d 215, 235 (3d Cir. 2004) (citing *In re Paoli*, 35 F.3d at 742 n.8). These factors are neither exhaustive nor applicable in every case. *Kannankeril*, 128 F.3d at 806–07.

Under the *Daubert* reliability prong, parties "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli*, 35 F.3d at 744. "The evidentiary requirement of reliability is lower than the merits standard of correctness." *Id.* "As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process—competing expert testimony and

active cross–examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *Mitchell*, 365 F.3d at 244 (citations and quotations omitted).

### B.   Cooper Woodring

Dorman argues that the opinions of PACCAR's expert, Cooper Woodring, must be excluded because Woodring is not qualified to opine on the design of a vehicle headlight. For the reasons that follow, the Court agrees with Dorman and grants the Motion to Exclude Mr. Woodring's opinions.

PACCAR offers the expert testimony of Cooper Woodring in support of the validity of the patents in suit in opposition to Dorman's arguments that the patents are invalid as obvious under 35 U.S.C. § 103 or invalid for failure to meet the ornamentality requirement for design patents under 35 U.S.C. § 171. The Court briefly summarizes the law applicable to these issues before considering Mr. Woodring's qualifications.

First, with respect to obviousness, "[i]n the context of design patents, the ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *MRC Innovations, Inc. v. Hunter Mfg, LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014). Obviousness of design patents is determined based on the perspective of a "designer of ordinary skill." *L.A. Gear, Inc. v. Thom McAn Show Co.*, 988 F.2d 1117, 1124 (Fed Cir. 1993). "The 'ordinary designer' means one who brings certain background and training to the problems of developing designs in a particular field . . . ." *In re Nalbandian*, 661 F.2d 1214, 1216 (C.C.P.A. 1981). Obviousness is a question of law, but "an expert's opinion may be relevant to the factual aspects of the analysis leading to the legal

conclusion." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1313 (Fed. Cir. 2013).

Second, with respect to ornamentality, a design patent is invalid if "[t]he appearance of the claimed design is 'dictated by' the use or purpose of the article." *L.A. Gear*, 988 F.2d at 1123. "If the particular design is essential to the use of the article, it can not be the subject of a design patent." *Id.* This determination is a question of fact. *PHG Techs., LLC. v. St. John Cos., Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006). In deciding this issue, the fact finder considers whether alternative ornamental designs for a functional article exist that would not adversely affect the utility of the article. *Id.* at 1367.

The Court next turns to the question whether Mr. Woodring has specialized knowledge regarding the factual issues underlying obviousness and ornamentality such that his testimony would be admissible under *Daubert*. Mr. Woodring is an "industrial designer" and inventor. Dorman *Daubert* Mot., Ex. A, Expert Report of Cooper C. Woodring (hereinafter "Woodring Report"), at 1. He has a Bachelor's of Fine Arts and a Master's degree in industrial design. *Id.* He spent the majority of his career with JCPenney Co. *Id.* at 2. During that time he designed products in many merchandise categories, including "automotive parts." *Id.* Specifically, while at JCPenney, he "was the designer of primary responsibility" for parts "such as batteries, shock absorbers, and citizen band or CB radios." *Id.* With respect to these parts, Mr. Woodring's primary responsibility was the design of the exterior appearance and packaging, though he was also involved in the design of some internal components. Dorman *Daubert* Mot., Ex. F, January 15, 2016, Deposition of Cooper C. Woodring, at 18–28 (hereinafter "Woodring Dep. Tr.").

Mr. Woodring has never designed a headlight of any kind, for any type of vehicle. Woodring Dep. Tr., at 53:5–7. However, he testified that he was qualified to opine regarding the issues in this case because:

> [H]eadlights are headlights. Whether they be for a truck or an automobile, they have similar requirements and components. I don't know that there's anything particularly unique about a headlight that isn't found in other lighting situations or other lighting products, whether it be a handheld light or a strobe for a camera.

Woodring Dep. Tr., at 53:11–20. Mr. Woodring further explained that he was qualified to opine on the design of a vehicle headlight based on his previous work designing camera strobes. *Id.* at 56. In sum, Mr. Woodring stated that he is qualified to testify to the design of a wider variety of products than those that he has personally worked on in the past because "I have a broader experience than most designers" and "a majority of the cases where I've served as an expert witness have been on products that I had never previously designed." PACCAR Resp. to Dorman *Daubert* Mot., Ex. 1, at 219:11–16.

In his expert report, Mr. Woodring opines on a number of highly technical issues that demonstrate that the design of headlights presents issues that are not found in other lighting situations. For example, he opines on the impact of the aerodynamics of PACCAR's truck designs on the ornamental design of the vehicle headlights, Woodring Report, at 15–16, 23–24. the thermal management properties of headlights, Woodring Report, at 17–18, and the effect of federal government safety regulations and specifications promulgated by standards organizations on the designs. Woodring Report, at 70–71.

In support of these technical opinions, Mr. Woodring offers nothing more than his generalized experience as an industrial designer.[5] Mr. Woodring has admittedly never designed a vehicle headlight or a product comparable to a vehicle headlight. Mr. Woodring's experience designing the packaging of batteries and shock absorbers, combined with his experience designing camera strobes, does not constitute "specialized knowledge" regarding the areas in which he is proposed to testify. *See Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1323 (Fed. Cir. 2016) (affirming exclusion of expert testimony based on the expert's imagination in the absence of prior experience designing patented articles).

PACCAR argues that the "pertinent art" in this case is "the ornamental design of vehicle headlights" and that Mr. Woodring is qualified because he is an expert in ornamental design. PACCAR Resp. to Dorman *Daubert* Mot., at 9. However, the ordinary designer standard also requires consideration of "the problems of developing designs in a particular field." *In re Nalbandian*, 661 F.2d at 1216. Mr. Woodring's general design experience does not qualify him to testify about the problems of developing designs for headlights in the automotive field. His opinions, particularly with regard to ornamentality, go far beyond appearance and relate to many of the functional elements of the headlights. Moreover, he does not offer any support for his averred specialized knowledge regarding aerodynamics, thermal management, or compliance

---

[5] In contrast, Dorman's expert, Michael Nranian, is an engineer who has designed vehicles and vehicle parts, including headlights, for Ford Motor Co., General Motors, and Allied Signal. PACCAR *Daubert* Mot., Ex. 1, at 3.

with federal highway safety regulations, and his generalized experience as an industrial designer does not provide such support.[6]

For these reasons, the Court grants Dorman's Motion to Exclude the expert opinions of Cooper Woodring.

### C.    Michael Wagner

In its *Daubert* Motion, Dorman argues that the opinions of PACCAR's damages expert, Michael Wagner, must be excluded as unreliable. For the reasons that follow, the Court denies Dorman's Motion to Exclude Mr. Wagner's opinions, without prejudice to Dorman's right to object at trial to Mr. Wagner's testimony on the ground that it lacks foundation or is otherwise inadmissible.

PACCAR offers Mr. Wagner's testimony regarding the amount of lost profits and price erosion damages. In a patent infringement case, "[l]ost-profits damages are appropriate where there is a reasonable probability that but-for the infringement, the patentee would have made the sales that were made by the infringer." *Versata Software, Inc. v. SAP Software, Inc.*, 717 F.3d 1255, 1263–64 (Fed. Cir. 2013). Damages in the form of lost profits "cannot be recovered if acceptable non-infringing alternatives were available during the period of infringement." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003). "[T]o be an acceptable non-

---

[6] Mr. Woodring's testimony in other recent cases has focused on design patents and trade dress to consumer products and did not relate to issues similar to the ones in this case. *See, e.g.*, *OraLabs, Inc. v. Kind Group LLC*, Civil Action No. 13-170, 2014 WL 1630690, at *1 (D. Colo. Apr. 24, 2014) (testimony regarding infringement of design patents claiming lip balm packaging); *Bobrick Washroom Equipment, Inc. v. American Specialties, Inc.*, Civil Action No. 10-6938, 2012 WL 3217858, at *1, *7–8 (C.D. Cal. Aug. 8, 2012) (testimony regarding durability of bathroom paper towel dispenser design); *Luv n' Care, Ltd. v. Mayborn USA, Inc.*, 898 F. Supp. 2d 634, 639 (S.D.N.Y. 2012) (testimony regarding infringement of design patents claiming children's "sippy" cup); *Apple, Inc. v. Samsung Elec. Co., Ltd.*, Civil Action No. 11-1846, 2011 WL 7036077, at *2–3 (N.D. Cal. Dec. 2, 2011) (testimony on ordinary observer infringement).

infringing substitute, the product or process must have been available *or* on the market at the time of infringement." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (internal quotations omitted).

Price erosion damages may also be available in a patent infringement case. "Reduction of prices, and consequently loss of profits, enforced by infringing competition is a proper ground for awarding of damages." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001) (quoting *Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536, 551 (1886)) (abrogated on other grounds by *Jazz Photo Corp. v. ITC*, 264 F.3d 1094, 1104–05 (Fed. Cir. 2001)). The patentee has the burden to show that "but for infringement it would have sold its product at higher prices." *Id.*

Dorman challenges Mr. Wagner's lost profits and price erosion damages opinions as unreliable due to Mr. Wagner's failure to explain certain assumptions he made in his report. With respect to lost profits, Dorman argues that Mr. Wagner failed to adequately support a statement in his report that "I am not aware of any acceptable non-infringing alternatives to the Dorman headlights at issue." Dorman *Daubert* Motion, Ex. I, ¶ 30. With respect to price erosion, Dorman argues that Mr. Wagner failed to adequately support his assumption that "PACCAR's price increases after July 2013 were impacted by Dorman's infringement." Dorman *Daubert* Motion, Ex. I, ¶ 70.

The Court rejects Dorman's argument that Mr. Wagner's failure to explain the bases for these assumptions renders his damages opinions unreliable. Like any damages expert, Mr. Wagner offers his testimony on the assumption that any necessary legal predicate to

admissibility of the damages theories will be proven at trial.[7] All damages expert opinions are dependent, for example, on the assumption that liability has been proven. PACCAR is not offering Mr. Wagner's testimony to prove the absence of acceptable non-infringing alternatives to the headlights or to prove that PACCAR's price increases were impacted by Dorman's infringement. Rather, Mr. Wagner's testimony is offered to show the amount of damages under those theories should they be applicable based on the evidence at trial.

For these reasons, the Court denies Dorman's Motion to Exclude Mr. Wagner's testimony regarding lost profits and price erosion, without prejudice to Dorman's right to object at trial to Mr. Wagner's testimony because it lacks foundation or is otherwise inadmissible.

### D.     John Blumenstein

Dorman argues that the declaration of John Blumenstein, submitted by PACCAR in support of its Motion for Summary Judgment, should not be considered by the Court. To the extent that Dorman's Motion seeks to preclude the Court from considering the declaration in deciding the instant Motions for Summary Judgment, the issue is moot because the Court denies PACCAR's Motion for Summary Judgment of infringement for the reasons set forth in § III.F, *supra*, and that decision does not rely on the Blumenstein declaration.

To the extent that Dorman's Motion seeks to exclude Mr. Blumenstein's testimony at trial based on the declaration, the Court concludes that Mr. Blumenstein's testimony regarding PTO procedure and rules is admissible, provided a proper foundation is laid. In addition, Mr. Blumenstein may, to the extent qualified, offer an expert opinion on the significance of the lines and hashing on the figures in the patent, or other relevant matters. However, he may not testify

---

[7] The Court notes that Dorman does not challenge the applicability of these damages theories as a matter of law in its Motion for Summary Judgment and thus the Court does not reach the issue of whether the record supports their applicability.

regarding his subjective mental state as the illustrator of the patents in suit because such testimony is not relevant to the issues in this case.

PACCAR offers the testimony of John Blumenstein, a patent illustrator at the law firm of Christensen O'Connor Johnson Kindness, which currently represents PACCAR in this case, in support of its Motion for Summary Judgment of infringement. Mr. Blumenstein avers that he was the patent illustrator for many patent applications, including the patents in suit. He proposes to testify regarding the PTO's rules and regulations on design patent drawings as well as his experience in drawing figures for patent applications. He also opines that certain "reference lines and hashing" in the figures of the patents in suit are "not physical components or features of the design claimed" in the patents, but rather "are merely indications of component contouring." PACCAR Mot. for Summ. J., Blumenstain Decl. ¶ 14.

First, the Court denies PACCAR's Motion for Summary Judgment for the reasons set forth in § III.F, *supra*, and this decision does not rely on the Blumenstein declaration. For that reason, Dorman's Motion to Exclude the declaration at this stage of the case is denied as moot.

At trial, Mr. Blumenstein may testify regarding the PTO's rules and regulations regarding design patent drawings. Expert testimony on the background of the patent prosecution process is admissible so long as the testimony does not conflict with applicable precedent and will assist the jury. *See, e.g.*, *King Drug Co. of Florence Inc. v. Cephalon Inc.*, 2015 WL 6740899, at *9 (E.D. Pa. Nov. 5, 2015). Provided a proper foundation is laid, Mr. Blumenstein's testimony regarding practice and procedure for patent drawings in design patent prosecution at the PTO is admissible.

In his declaration, Mr. Blumenstein also states:

The "reference lines" and "hashing" cited by Dorman's witness are not physical components or features of the design claimed in U.S. Patent D525,731. Instead, in

>   accordance with the rules and regulations of the USPTO, such "lines and hashing"
>   are merely indications of component contouring."

Blumenstein Decl. ¶ 14. To the extent that he is qualified as an expert, Mr. Blumenstein may

offer an expert opinion, based on his experience as a patent illustrator, as to the significance of

the lines and hashing in the figures in the patent, or other relevant matters.

However, it is PACCAR's position that Mr. Blumenstein is not offered to testify as an

expert witness, but rather as a fact witness. PACCAR Resp. to Dorman Mot. to Exclude

Blumenstein Decl., at 1. PACCAR argues that Mr. Blumenstein may testify regarding what he

intended the reference lines and hashing in the patents to mean at the time when he illustrated

them. The Court rejects this argument. The subjective intent of the inventor or the patent

prosecutor during the drafting of a patent application has no relevance to the scope of an issued

patent. *See, e.g.*, *Howmedica Osteonics Corp. v. Wright Medical Tech. Inc.*, 540 F.3d 1337, 1347

(Fed. Cir. 2008) (concluding that inventor testimony is not relevant to claim construction). Mr.

Blumenstein may not offer testimony regarding his intent or his mental state at the time he

illustrated the figures of the patents in suit because his pre-filing intent with respect to the scope

of an issued patent is irrelevant.

### E.    Michael Nranian

In its Motion to Exclude, PACCAR argues that the opinions of Dorman's expert on

patent invalidity, Michael Nranian, must be excluded as unreliable because he applied incorrect

legal standards. Specifically, PACCAR challenges Mr. Nranian's obviousness opinions on the

ground that he improperly disregarded functional features and Mr. Nranian's ornamentality

opinions on the ground that he failed to adequately explain his analysis. In addition, PACCAR

challenges Mr. Nranian's opinions regarding the on-sale bar and public disclosure. For the

reasons that follow, the Court denies PACCAR's Motion to Exclude Mr. Nranian's opinions

with two exceptions: (1) that part of the Motion related to Mr. Nranian's regarding the on-sale bar is denied as moot, and (2) Mr. Nranian may not offer an opinion regarding whether the 2004 PACCAR dealer meeting was open to the public.

The Court first addresses the challenge to Mr. Nranian's obviousness opinions. "In the context of design patents, the ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *MRC Innovations, Inc. v. Hunter Mfg, LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014). In other words, the inquiry is "whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design." *Id.* This is a two-step process. *Id.* First, the obviousness inquiry begins with identification of a so-called primary or *Rosen* reference: "something in existence, the design characteristics of which are basically the same as the claimed design." *Id.* (quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982)). Second, once the primary reference is found, other "secondary" references "may be used to modify it to create a design that has the same overall visual appearance as the claimed design." *Id.*

PACCAR contends that Mr. Nranian failed to correctly identify references because he excluded functional aspects of the designs. This argument is based on *Sport Dimension, Inc. v. Coleman Co. Inc.*, 820 F.3d 1316 (Fed. Cir. 2016). In that case, the United States Court of Appeals for the Federal Circuit determined that the district court erred in verbally construing the claims in a design patent case to exclude certain functional features. *Id.* at 1322. The Federal Circuit rejected the verbal claim construction that per se rejected the functional features, and stated:

> [T]he design includes the shape of the armbands and side torso tapering, to the extent that they contribute to the overall ornamentation of the

> design . . . . [H]owever, the armbands and side torso tapering serve a functional purpose, so the fact finder should not focus on the particular designs of these elements when determining infringement, but rather focus on what these elements contribute to the design's overall implementation. Because of the design's many functional elements and its minimal ornamentation, the overall claim scope of the claim [sic] is accordingly narrow.

*Id.* at 1323. The court explained that "design patents protect the overall ornamentation of a design, not an aggregation of separable elements." *Id.* at 1322.

This Court rejects PACCAR's argument on this issue. In this case, Mr. Nranian was required to consider, but not give dispositive weight to, functional elements in offering an opinion on the overall impression of the design. His opinions identifying primary references are in terms of the "overall impression" of the designs. PACCAR *Daubert* Mot., Ex. 1, Expert Report of Michael Nranian (hereinafter "Nranian Report"), at 7–8; *see, e.g.*, Nranian Report, at 26 ("Sutton discloses a shape of a cover lens that includes the same overall visual appearance as the design of the '905 Patent."). This analysis based on overall visual impression satisfies *Sport Dimension*. Mr. Nranian's ultimate conclusions may be challenged through cross-examination or contrary expert testimony.

Second, the Court addresses the challenge to Mr. Nranian's ornamentality opinions. "A design patent can be declared invalid if the claimed design is 'primarily functional' rather than 'primarily ornamental,' i.e. if 'the claimed design is "dictated by" the utilitarian purpose of the article.'" *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1315 (Fed. Cir. 2013) (quoting *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993)). When performing this assessment, the claimed design must be viewed "in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article." *Id.* (citations and quotations omitted). The fact finder should consider certain factors that, *inter alia*, may be useful in determining whether a design as a whole is

dictated by functional considerations:

> (1) whether the protected design represents the best design; (2) whether alternative designs would adversely affect the utility of the specified article; (3) whether there are any concomitant utility patents; (4) whether the advertising touts specific features of the design as having specific utility; (5) and whether there are any elements in the design or an overall appearance clearly not dictated by function.

*Id.* (citations and quotations omitted).

PACCAR argues that Mr. Nranian ignored the *High Point Design* factors in reaching his opinion. The Court rejects this argument. Mr. Nranian focused primarily on factor two, whether alternative designs would adversely affect the utility of the specified article. Mr. Nranian opines that given the overall shape of the front of the trucks and aerodynamic concerns, only one possible shape of the headlights was possible and thus the designs are functional. There is no requirement that all of the *High Point Design* factors be considered and a single factor may be dispositive. *See Best Lock Corp. v. Ilco Unican Corp.* 94 F.3d 1563, 1566 (Fed. Cir. 1996). PACCAR's challenge goes to the credibility of Mr. Nranian's conclusions, not the reliability of his methods under *Daubert*.

PACCAR also challenges Mr. Nranian's opinions regarding the on-sale bar and public disclosure. Because the Court concludes in § III.B *supra* that Dorman's on-sale bar invalidity defense fails as a matter of law, the Motion to Exclude Mr. Nranian's on-sale bar opinions is denied as moot.

PACCAR also argues that Mr. Nranian should not be allowed to testify regarding the public disclosure bar. The Court agrees that Mr. Nranian may not opine regarding whether or not the 2004 dealer meeting was open to the public because he lacks personal knowledge of the dealer meeting. However, Mr. Nranian may, provided a proper foundation is laid, testify with respect to whether the design was ready for patenting prior to the critical date. *See Pfaff*, 525

U.S. at 67–68 (explaining that an invention is "ready for patenting" if drawings or descriptions exist sufficient to enable a designer of ordinary skill to produce the design).

For these reasons, the Court grants in part PACCAR's Motion to Exclude Mr. Nranian's opinions. He may not opine regarding whether or not PACCAR's 2004 dealer meeting was open to the public. That part of PACCAR's Motion which seeks to exclude Mr. Nranian's opinions regarding the on-sale bar is denied as moot. PACCAR's Motion to Exclude Mr. Nranian's testimony is denied in all other respects.

## V.      CONCLUSION

The Court grants PACCAR's Motion for Summary Judgment on Dorman's affirmative defense of invalidity of the patents in suit based on the on-sale bar. The Court denies PACCAR's Motion for Summary Judgment of infringement. The Court grants PACCAR's Motion for Summary Judgment on Dorman's business tort claims.

The Court denies Dorman's Motion for Summary Judgment on its affirmative defenses of patent invalidity based on the on-sale bar and public disclosure bar. The Court also denies Dorman's Motion for Summary Judgment of no infringement based on a disavowal of scope during prosecution of the '905 patent. The Court grants Dorman's Motion for Summary Judgment of no willful infringement.

The Court grants Dorman's Motion to Exclude the expert opinions of Cooper Woodring, but denies the Motion to Exclude the opinions of Michael Wagner. The Court grants in part and denies in part Dorman's Motion to Exclude the testimony of John Blumenstein, who may testify regarding PTO procedures and rules generally, but not with respect to his subjective intent as illustrator of the patents in suit. The Court grants that part of PACCAR's Motion to Exclude the expert testimony of Michael Nranian with respect to whether PACCAR's 2004 dealer meeting

was open to the public but denies the Motion to Exclude Mr. Nranian's opinions in all other respects.

An appropriate order follows.